## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARA HOLMES | |
| *Plaintiff*, | |
| vs. | Case No. 10-2672-EFM |
| CUTCHALL MANAGEMENT KANSAS LLC, d/b/a Famous Dave's, | |
| *Defendant*. | |

## MEMORANDUM AND ORDER

Plaintiff Mara Holmes brings suit under the Americans with Disabilities Act of 1990 ("ADA"). She alleges that Defendant Cutchall Management Kansas LLC, d/b/a/ Famous Dave's Restaurant, discriminated against her on the basis of her focal epilepsy by terminating her employment in July 2009.  Before the Court is Defendant's Motion for Summary Judgment (Doc. 30).  Defendant contends that Plaintiff cannot establish that her termination occurred on the basis of her disability.  Because the Court finds that there are factual issues surrounding Plaintiff's termination, the Court denies Defendant's motion.

### I.  Factual and Procedural Background[1]

Plaintiff Mara Holmes has the disability of focal epilepsy. Plaintiff had her first seizure in

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

May 2008, and her next seizure occurred on July 12, 2009. Prior to July 14, 2009, Plaintiff had not disclosed her seizure condition to the managers at the restaurant.

Plaintiff started her employment, as a server, with Defendant Cutchall Management Kansas LLC, d/b/a Famous Dave's Restaurant, in April 2006. Famous Dave's Restaurant is located in Kansas City, Kansas. In 2009, the managers were Jeri McDonnell, Ryan McDonnell, Tim Marino, and Kristin Marino.[2] Jeri was the General Manager. All managers had supervisory and disciplinary authority over servers and hostesses, including the ability to terminate an individual's employment.

Famous Dave's Restaurant has a "no call/no show" policy that requires employees to contact the restaurant prior to their shift to report an absence. Absences for medical reasons are excused as well as absences caused by an emergency. Employees who call in prior to their work shift and report an absence will receive a write-up in their personal file. Under the policy, employees who fail to call in and report to work are terminated from their position. The restaurant has terminated numerous employees for failing to call in and report to work.

Plaintiff was scheduled to work the evening shift on June 23, 2009, but Plaintiff believed that she was scheduled to work on June 24, 2009. While Plaintiff was in route to Iowa to visit some friends on June 23, a coworker of Plaintiff's informed Plaintiff that she was scheduled to work that evening. Plaintiff attempted to find coverage for her shift, but was unsuccessful. Plaintiff contacted Jeri and told her that she had read the schedule incorrectly, and she told Jeri that she would try to make it to work that evening. Plaintiff and her husband were traveling through a bad storm that included tornado warnings. Because of the weather, Plaintiff's husband did not want to turn around and return to Kansas City. Plaintiff attempted to contact Jeri again, but was unsuccessful because

---

[2] The Court will use these individuals' first names to avoid confusion.

she kept losing reception. Plaintiff did not show up for her shift or speak with Jeri again that night. Plaintiff did not call Jeri when she reached her destination on June 23. She also did not call Jeri on June 24, 25, or 26.

After Plaintiff failed to report to work on June 23, Jeri decided to terminate Plaintiff's employment. It is not Jeri's practice to send termination notices to employees for a no call/no show, and employees are advised of their termination in person, when and if they return to work. Jeri left for vacation on June 26, and Plaintiff did not return to work until June 27. Jeri avers that, before she left, she informed another manager, Kristin, to handle the situation with Plaintiff if she attempted to return to work. Jeri told Kristin that Plaintiff must have a valid reason for missing work on June 23; otherwise, she should be terminated.

On June 27, 2009, Plaintiff reported to work and worked with another manager, Tim.[3] Plaintiff worked her shift that night. She also worked approximately five to seven additional shifts between June 27 and July 8. Plaintiff was scheduled to work shifts with Kristin on at least four occasions after June 23, and she was not terminated during any of her shifts.

Jeri returned to work from vacation on July 9, 2009. She states that she was surprised to find out that Tim had allowed Plaintiff to work on June 27.

On July 12, 2009, Plaintiff was at home and suffered a seizure. Plaintiff's mother contacted the restaurant to report that Plaintiff would be absent. Plaintiff's mother spoke with Jeri and advised her that Plaintiff had "passed out" and was being transferred by ambulance to the hospital. Jeri told Plaintiff's mother that Plaintiff would need to contact the restaurant as soon as she was feeling better. Plaintiff's mother-in-law also contacted the restaurant and informed whomever she spoke

---

[3] There is conflicting evidence as to whether a conversation occurred on June 27 between Plaintiff and Tim about Plaintiff's absence on June 23.

with that Plaintiff would not be at work because she had suffered a seizure.

Plaintiff reported to work on July 14, 2009. When Plaintiff arrived, she first met with Ryan, the server manager. She showed him the doctor's note that indicated she had suffered a seizure on July 12. Ryan looked over the paperwork and informed Plaintiff that she should give it to his mother, Jeri. Ryan also told Plaintiff that the seizure may cause her to lose her driver's license.

Plaintiff then met with Jeri. This was the first time that Jeri and Plaintiff had met in person since Plaintiff's absence on June 23. During this conversation, Plaintiff informed Jeri of her seizure, and Jeri looked over Plaintiff's paperwork. She then asked Plaintiff about the no call/no show on June 23. Jeri then informed Plaintiff that she was terminated for not coming to work on June 23.

Plaintiff filed suit, alleging discrimination on the basis of her disability. Defendant now seeks summary judgment arguing that Plaintiff cannot establish a discrimination claim.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[4] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6] To meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the

---

[4] Fed. R. Civ. P. 56(a).

[5] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

nonmoving party's claim.[7]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[9]  Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[10]

### III.  Discussion

Plaintiff contends that Defendant discriminated against her because Defendant terminated her on the basis of her disability: focal epilepsy.  Defendant moves for summary judgment, arguing that Plaintiff cannot demonstrate that her disability played any role in her termination.

### A. Prima Facie Case

To establish a prima facie case of discrimination under the ADA, 42 U.S.C. § 12101 et seq,[11] Plaintiff must demonstrate that (1) she is a disabled person within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) she suffered discrimination by her employer because of the disability.[12]  Defendant does

---

[7] *Id.* (citing *Celotex*, 477 U.S. at 325).

[8] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[10] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[11] Plaintiff brought her claim under the ADA, and both parties proceed under the ADA. The Court notes that the Americans with Disabilities Amendments Act (ADAAA) became effective in January 2009, and everything in this case occurred after the ADAAA's enactment.. For purposes of this motion, the ADAAA does not affect the Court's analysis.

[12] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011); *see also Allen v. SouthCrest Hospital*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011) (stating that the third element in a disability termination claim requires the plaintiff to demonstrate that she was fired because of her disability).

not contest the first two elements, but argues that Plaintiff cannot establish that Defendant terminated Plaintiff because of her disability. "[T]o establish the third element of a prima facie case of disability discrimination, the plaintiff must show that she was terminated because of her disability, or that the employer terminated the plaintiff 'under circumstances which give rise to an inference that the termination was based on her disability.' "[13]

Defendant argues that Plaintiff cannot establish the third element of a prima facie case of discrimination because Jeri, the decision-maker regarding Plaintiff's termination, decided to terminate Plaintiff on June 23, prior to learning about Plaintiff's disability on July 14. Defendant asserts that Jeri only terminated Plaintiff on July 14 because that was the first opportunity that Jeri had to meet with Plaintiff. Thus, Defendant argues that Plaintiff's disability could not be the cause of her termination.

In *Holopirek v. Kennedy & Coe, LLC*,[14] a District of Kansas case, the defendant made a similar argument that the plaintiff could not establish the third element of a prima facie case of disability discrimination because the defendant decided to terminate the plaintiff's employment before learning about the plaintiff's disability.[15] The court found that the factual circumstances raised a question of whether the decision to terminate occurred before or after learning of the plaintiff's disability.[16] The court found that there was no contemporaneous evidence to support the defendant's contention that the termination decision was made prior to the defendant learning of the

---

[13] *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 748 (10th Cir. 1999) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[14] 303 F. Supp. 2d 1223 (D. Kan. 2004).

[15] *Id.* at 1230.

[16] *Id.* at 1230-31.

plaintiff's disability.[17]  Thus, the court rejected the defendant's argument and found that the plaintiff

could establish a prima facie case of discrimination.[18]

    Similar to *Holopirek*, there are factual issues as to when Defendant made the decision to

terminate Plaintiff.  Defendant's contention that Jeri made the decision to terminate Plaintiff prior

to learning of her disability primarily rests on Jeri's affidavit. Jeri avers that she made the decision

to terminate Plaintiff on June 23, but because of her vacation, she did not have the opportunity to

meet with Plaintiff until July 14.  But Jeri also avers that at least one other manager, Kristin, knew

that Plaintiff should be terminated prior to July 14 because Jeri instructed Kristin to terminate

Plaintiff if she returned to work without a valid explanation for her absence.  Plaintiff provides

evidence that she was scheduled to work with Kristin four times after June 23, and she was not

terminated during any of those shifts.[19] This evidence suggests that either Kristin did not follow

through with Jeri's instructions or that Kristin was not told that Plaintiff should be terminated. The

latter scenario raises an inference that Jeri did not decide to terminate Plaintiff prior to learning of

Plaintiff's epilepsy.

    Furthermore, there is conflicting evidence regarding Plaintiff's return to work. The evidence

demonstrates that Plaintiff worked with Tim, another manager, when she returned to work on June

27.  Jeri avers in her affidavit that she verbally reprimanded Tim for allowing Plaintiff to work on

June 27 and not following through with Plaintiff's termination. But Jeri's own affidavit never avers

---

[17] *Id.* at 1231.

[18] *Id.*

[19] Plaintiff provides the Court with work schedules demonstrating that Kristin and Plaintiff were scheduled together four times. Defendant does not dispute this fact. Other than the work schedules, neither party provides evidence that Plaintiff and Kristin actually worked together four times. For purposes of this motion, the Court presumes that Plaintiff and Kristin did indeed work together.

that she told Tim to fire Plaintiff for violating the no call/no show policy.  And, Tim testified that Jeri neither informed him that Plaintiff was not supposed to work after June 23, nor verbally reprimanded him for not terminating Plaintiff.  Tim also testified that he had no prior indication from Jeri that she was going to terminate Plaintiff.  Finally, the evidence demonstrates that Jeri terminated Plaintiff immediately after learning that she had missed work two days earlier because she had suffered a seizure. This evidence is sufficient to establish a prima facie case of discrimination.

### B. Pretext Analysis

If a plaintiff sets forth sufficient evidence to establish a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.[20]  Defendant's reason that it terminated Plaintiff for failure to show up for her scheduled shift is a legitimate, nondiscriminatory reason.  Plaintiff now has the burden to demonstrate that there is a genuine issue of fact as to whether Defendant's reason is a pretext for disability discrimination.[21]  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[22]

As noted above, there are weakness and inconsistencies in Defendant's asserted reasons for its action. Namely, there is a factual issue as to when Jeri made the termination decision. Although Jeri could have made the decision to terminate Plaintiff on June 23, there is no contemporaneous

---

[20] *C.R. England*, 644 F.3d at 1038 (stating that the *McDonnell Douglas* burden shifting framework applies to disability discrimination claims).

[21] *Morgan*, 108 F.3d at 1323.

[22] *Id.* (internal quotation marks and citation omitted).

evidence supporting this contention. Instead, the evidence raises the question of when the decision was actually made. Defendant emphasizes that Jeri was the only decision-maker and argues that Plaintiff should not benefit from the fact that Jeri took a vacation and did not communicate the termination decision to Plaintiff for approximately two weeks. But any manager allegedly had the authority to terminate Plaintiff. In fact, Jeri states in her affidavit that she directed another manager to terminate Plaintiff in Jeri's absence. Plaintiff worked approximately five to seven shifts without incident, despite being scheduled four times to work with the manager who was directed to terminate her. The Court concludes that there are factual issues surrounding Plaintiff's termination, and it is for a factfinder to determine whether Plaintiff's manager decided to terminate her based on her failure to show up for her shift on June 23, or due to her disability.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 30) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 26th day of July, 2012.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE